# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4606 | **DATE** | 4/24/2003 |
| **CASE TITLE** | McLaughlin vs. Chicago Transit Authority, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendants' motion for summary judgment (34-1) is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 number of notices | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | APR 25 2003 date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 4/24/2003 | |
| | | | 03 APR 24 PM 5:26 | date mailed notice | |
| MPJ | courtroom deputy's initials | | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELAINE McLAUGHLIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO TRANSIT AUTHORITY, JOYCE )<br>COLEMAN, GEOFFREY LAYHE, ROBERT )<br>GIERUT, LARRY WALL, and DORVAL )<br>CARTER, )<br>)<br>Defendants. ) | No. 01 C 4606 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elaine McLaughlin is a white female who worked for defendant Chicago Transit Authority ("CTA") from March 21, 1996 until her termination on October 19, 2001. Defendants Joyce Coleman, Geoffrey Layhe, Robert Gierut, Larry Wall, and Dorval Carter are all CTA employees who occupied management or vice-presidential positions during Ms. McLaughlin's tenure there. Ms. McLaughlin filed this suit complaining that the defendants discriminated against her on the basis of her race and gender and retaliated against her for reporting their discrimination and for exercising her rights under the Family and Medical Leave Act ("FMLA"). The defendants now move for summary judgment in their favor. I grant the motion.

## I. Facts

For the purposes of this summary judgment motion, I must evaluate admissible evidence in the light most favorable to Ms.



McLaughlin, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Ms. McLaughlin's first direct supervisor at the CTA was Constance Mortell, General Manager of Media Relations. During the summer of 1996, Ms. McLaughlin began reporting to the new Vice-President of Communications, Noelle Gaffney, a white female. In 1998, Ms. McLaughlin was transferred into the Human Resources Program Compliance Department under the supervision of defendant Robert Gierut, a white male. Mr. Gierut informed Ms. McLaughlin that the transfer occurred because Ms. Gaffney no longer wanted Ms. McLaughlin in her department.

In September 1999, Ms. McLaughlin was again transferred, this time to the Benefit Services Department under the supervision of Charles Andersen, a white male. Mr. Andersen told Ms. McLaughlin that the transfer occurred because Mr. Gierut wished to "get rid" of Ms. McLaughlin. A month later, Ms. McLaughlin was assigned to manage the CTA's FMLA program.

In February 2000, Joyce Coleman, an African-American female, began working as Vice President of Human Resources for the CTA. In that role, she directly supervised Mr. Andersen, Ms. McLaughlin's direct supervisor. Ms. Coleman complained about Ms. McLaughlin's job performance to Mr. Andersen. Even though Mr. Andersen was happy with Ms. McLaughlin's performance, Ms. Coleman directed him to

downgrade her performance review. She also directed him to downgrade the performance review of Ms. McLaughlin's colleague Mr. Gannon.

In April of 2000, Mr. Andersen recommended a salary increase for Ms. McLaughlin, which was denied by Ms. Coleman. At a meeting in May of 2000, she criticized the FMLA program administered by Ms. McLaughlin and stated that she was "sick of the childishness" in Ms. McLaughlin's department. Ms. Coleman also told Ms. McLaughlin that "FMLA was a problem" which needed work and wrote in memos that she was not pleased with the program. When speaking with other management personnel, Ms. Coleman referred to Ms. McLaughlin as a "white bitch" and a "pushy female," stating that everyone who came from Bridgeport was "the same," that "none of them should be trusted," and that Ms. McLaughlin was the last remaining employee who came from Bridgeport (a white working-class neighborhood), as the others had been "gotten rid of." Ms. Coleman told Ms. McLaughlin that Ms. McLaughlin did not understand "black culture" or people "from the 'hood."

Ms. McLaughlin took several FMLA leaves during her employment with the CTA in order to cope with her father's death, her own foot surgery, and her son's broken leg. When Mr. Andersen informed Ms. Coleman that Ms. McLaughlin had filed a complaint with the U.S. Department of Labor in August 2000 regarding her FMLA leave, Ms. Coleman was "not happy." On September 15, 2000, Ms. McLaughlin

3

filed a discrimination complaint with the CTA's Equal Employment Opportunity office. Subsequent to the filing of this complaint, Ms. Coleman approved a salary increase for Ms. McLaughlin.

The CTA terminated Mr. Andersen on November 17, 2000. Following Mr. Andersen's termination, Geoffrey Layhe, a white male, took over as Ms. McLaughlin's direct supervisor. Mr. Layhe told Mr. Andersen that he (Mr. Layhe) did not like Ms. McLaughlin. On May 15, 2001, Layhe recommended to Ms. Coleman that Ms. McLaughlin be terminated and replaced by Carla Jones, a black female employee. Ms. Coleman wrote a memo to Dorval Carter, the CTA's Executive Vice President for Management and Performance, explaining that Ms. McLaughlin's performance was poor and her behavior unprofessional. The memo also stated that Ms. McLaughlin contacted the Department of Labor without management approval and that she had taken a week-long leave of absence due to asthmatic bronchitis, and that for "the above stated reasons" Ms. McLaughlin ought to be terminated. However, Ms. McLaughlin was not terminated at that time.

In September of 2001, Larry Wall, a white male, took over from Mr. Layhe as Ms. McLaughlin's direct supervisor. Mr. Layhe informed Mr. Wall that he had had problems with Ms. McLaughlin's behavior in the past and that he had received complaints about her administration of the FMLA program. On October 10, 2001, Mr. Wall entered Ms. Mclaughlin's office to ask for a work plan and a database of FMLA applications, and "went off" on Ms. McLaughlin

4

when she did not immediately produce the requested items. The following day, Mr. Wall requested permission from Ms. Coleman to terminate Ms. McLaughlin. The permission was granted, and on October 19, 2001, Ms. McLaughlin was terminated.

On December 19th, 2001, Ms. McLaughlin filed a discrimination charge against the CTA with the Equal Employment Opportunity Commission. After receiving a right to sue letter, she filed the present case.

## II. Analysis

### A. The plaintiff cannot prove her Title VII discrimination claims.

Count I and Count IV of the First Amended Complaint charge that the CTA discriminated against Ms. McLaughlin due to her race and her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*. As the same test applies to both counts, I will analyze them together.

There are two methods by which a plaintiff may prove intentional discrimination by an employer under Title VII. She may rely on direct evidence, or in the alternative, she may rely on the burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996).

Ms. McLaughlin appears to concede that she has not offered any direct evidence of discrimination, proceeding directly to a *McDonnell* analysis in her response to the defendants' summary

5

judgment motion. Under the *McDonnell* framework, McLaughlin must first establish a *prima facie* case of discrimination, which creates a rebuttable presumption of unlawful discrimination. McLaughlin must prove, first, that she was within a protected class; second, that her performance met the CTA's legitimate expectations; third, that she suffered an adverse employment action; and finally, that CTA treated similarly situated persons not in the protected class more favorably. *Cheek*, 97 F.3d at 204.

The defendants apparently concede that Ms. McLaughlin is a member of a protected class both in terms of her gender and, in the particular workplace at issue here, her race. They likewise concede that she suffered an adverse employment action in her termination. Thus, the outcome of the analysis will turn on the questions of whether Ms. McLaughlin met the CTA's legitimate expectations and whether it treated similarly situated persons who were not white females more favorably.

The defendants argue strongly that Ms. McLaughlin was an unsatisfactory employee. Ms. McLaughlin admits that Mr. Andersen "had concerns about" her "time and attendance records." The record is full of evidence that other CTA employees found her behavior inappropriate. Mr. Layhe stated in his affidavit that he found Ms. McLaughlin insubordinate and that he received complaints about her rudeness from other managers who interacted with her.

Furthermore, on the record it appears that Ms. McLaughlin cannot show that similarly situated employees who were not members of the protected class were treated more favorably than she. She points out that the two other managers in the Benefits Services department, both white men, were not fired. However, she admits in her response to the defendants' statement of facts that Ms. Coleman never received any complaint of insubordination regarding either of those two men — or regarding the white woman who took over Ms. McLaughlin's job after her termination. Thus, the other managers really were not similarly situated to Ms. McLaughlin. Ms. McLaughlin would have a very good argument here if she could show that other insubordinate managers were allowed to keep their jobs while she alone was disciplined. *See Curry v. Menard, Inc.*, 270 F.3d 473 (7th Cir. 2001). But the fact that employees with clean records were retained while an employee with a record of insubordination was fired does not give rise to an inference of discrimination, even if the fired employee differs from the others in race or gender.

What is more, it is not clear whether anyone at the CTA was similarly situated to Ms. McLaughlin under the current Seventh Circuit definition of the term. "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery*

*Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). As the other managers in her department had very different job descriptions, varying levels of seniority, etc., it is difficult to argue that they were "similarly situated" to Ms. McLaughlin under this standard.

Assuming for the sake of argument that the other Benefits Services managers were similarly situated but for their clean disciplinary records, Ms. McLaughlin's claim still ultimately fails. She explains that her alleged deficiencies were either pretexts for discrimination or fabricated out of whole cloth, and that she was singled out for more difficult assignments because of her gender and race. Where, as here, the plaintiff was allegedly singled out for discipline due to her membership in a protected class, she "does not have to show that she was meeting her employer's expectations in order to establish a *prima facie* case of discriminatory discharge." *Flores v. Preferred Technical Group*, 182 F.3d 512, 514 (7th Cir. 1999). Under those circumstance, showing that the plaintiff is a member of a protected class, and that she was discharged and replaced, is sufficient to shift the burden to the defendant to show a legitimate, nondiscriminatory reason for the discharge. *Id.* at 514.

This the defendants do voluminously. The plaintiff was ultimately terminated due to her confrontation with Mr. Wall, her then-supervisor, on October 10, 2001. Mr. Wall asserts in his

8

deposition that on that day, Ms. McLaughlin was unable to find the password to a database for which she was responsible, she refused to call non-management employees in connection with her job, she became agitated and yelled at Mr. Wall to "sit down [and be quiet]" so loudly that his other employees commented on it later, and she admitted to hanging up on a difficult client. Mr. Wall responded by seeking permission from Ms. Coleman to terminate Ms. McLaughlin.

This non-discriminatory explanation for the termination shifts the burden back to Ms. McLaughlin, who must show that this description is a mere pretext for the underlying discriminatory basis of her discharge. *Id.* at 516. She disputes Mr. Wall's version of what occurred on October 10, but this "naked argument that [the defendants'] explanation was a mere pretext for discrimination does not raise a triable issue of fact." *Id.* at 517. Possible racial animus against Ms. McLaughlin on Joyce Coleman's part may be reasonably inferred from her earlier comments, but Mr. Wall, who made the complaint that ultimately brought about Ms. McLaughlin's termination, is a white man, and Ms. McLaughlin does not allege a single observation that gave her cause to believe his actions were motivated by her race or gender. Her bare allegation that his account of the confrontation is fictional is inadequate under *Flores*. Therefore, Ms. McLaughlin has failed to bear her burden of showing that the CTA's stated reason for her termination was a pretext for race or gender discrimination.

9

To the extent that Ms. McLaughlin's claim is based on a "hostile work environment" argument, none of the incidents she described are sufficient to suggest that her working environment was hostile due to the racial or gender animus of individual superiors. The only indicators of animus she alleges are that she was referred to as "white bitch" and "pushy female" outside of her presence, and that Ms. Coleman made two derogatory and inappropriate racial comments directly to Ms. McLaughlin. However, remarks made outside an employee's presence are not actionable as harassment, *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998), and two obnoxious racial remarks to an employee's face are not sufficient to create a hostile working environment under Title VII. *Id.* at 467.

The defendants' motion for summary judgment as to Count I and Count IV is granted.

### B. The plaintiff cannot prove her Title VII retaliation claims.

Count III and Count VI of the First Amended Complaint seek relief under Title VII on the grounds that the CTA retaliated against Ms. McLaughlin for filing complaints with its internal regulatory department, the EEO, singling her out for "pretextual and harassing discipline and untenable work conditions."

The timing of the complained-of behavior renders this accusation highly suspect. According to Ms. McLaughlin's Rule 56 Statement of Facts, Ms. McLaughlin filed her EEO complaint on

10

September 15, 2000. But most of Ms. McLaughlin's complaints about her treatment in the Benefits Services department long precede this date. She began working in that department in September 1999, and her complaints regarding her unbearable workload, Ms. Coleman's hostility, and Ms. Coleman's refusal to provide additional staff all date from the first year of her employment in that department. A *McDonell* analysis is thus not necessary; Ms. McLaughlin's negative experiences at the CTA could not have been due to retaliation for filing discrimination complaints because they began before the complaints were filed. The defendants' motion for summary judgment on counts III and VI is granted.

Count VIII of the First Amended Complaint seeks relief under Title VII on the grounds that the CTA terminated Ms. McLaughlin for filing a complaint with the EEOC. Ms. McLaughlin presents no direct evidence to support this allegation. Assuming once again that Ms. McLaughlin makes a *prima facie* case under *Flores* and shifts the burden to the CTA, as discussed above, the CTA had a nondiscriminatory reason for firing her. Based on the evidence offered, a reasonable jury could not find that this reason was a pretext for retaliation against her for complaining about the CTA's race and gender discrimination. The defendants' motion for summary judgment on count VIII is granted.

**C. The plaintiff cannot prove her § 1983 Equal Protection claims.**

Ms. McLaughlin's claims against the CTA under 42 U.S.C. §

1983, counts II, V, and IX, have no merit. The Seventh Circuit has addressed the specific question of whether a § 1983 suit may be maintained against the CTA based upon the actions of a manager and a Deputy Executive Director who were responsible for the decision to fire a plaintiff, allegedly in violation of his constitutional rights. In the absence of evidence that the CTA Board of Directors maintained a policy of terminating members of the plaintiff's class, the answer was unequivocally no. *Radic v. Chicago Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). At most, the CTA Executive Director might be considered a policymaker sufficient to create *respondeat superior* liability under *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, (1978), but the decisions of management employees below that level are not policy. *Id.* at 161. Ms. McLaughlin does not claim that the CTA maintained a systemic policy of terminating women or white people; thus summary judgment in favor of the CTA is appropriate on her § 1983 claims against it.

Ms. McLaughlin also sues the individually named defendants under § 1983 on the grounds that they violated the Equal Protection Clause by discriminating against her due to her race, gender, and as a "class of one." "A claim of intentional discrimination under the Equal Protection Clause is subject to the same methods of proof as an analogous claim under Title VII," with the added burden that the intentional discrimination must have been the "but for" cause of the adverse employment action. *See Button v. Harden*, 814 F.2d

382, 383 (7th Cir. 1987); *Porter v. Illinois Dept. of Children and Family Servs.*, No. 98-1152, 1998 U.S. App. LEXIS 30145, at *20 (7th Cir. Nov. 23, 1998). As discussed above, Ms. McLaughlin has failed to establish that either her termination or her treatment while an employee was the result of invidious racial or gender discrimination.

**D. The plaintiff cannot prove that she was discriminated against for exercising her rights under the FMLA.**

In count VII, Ms. McLaughlin asserts that her exercise of her rights under the FMLA was a reason for her termination. The same *McDonnell* burden-shifting test is used to analyze both Title VII claims and FMLA discrimination claims, *King v. PTG*, 166 F.3d 887, 891 (7th Cir. 1999). As discussed above, since Ms. McLaughlin claims that she was singled out for discipline for discriminatory reasons, under *Flores* she is relieved of the obligation to show that she was meeting her employer's expectations. The burden shifts to the CTA, which has met its obligation of showing that it had a nondiscriminatory reason for discharging her. Ms. McLaughlin must then prove that there is a genuine issue of material fact by providing sufficient evidence whereby a reasonable jury could find by a preponderance of the evidence that this nondiscriminatory reason is a pretext for FMLA-based discrimination. *Snelling v. Clarian Health Partners, Inc.*, 184 F. Supp. 2d 838, 848 (S.D. Ind. 2002).

Ms. McLaughlin cannot meet this burden. As noted above, the decision to terminate her was made by Mr. Wall. Mr. Wall did not begin working with Ms. McLaughlin until after she had returned from her medical leaves. The plaintiff has offered no evidence that he based his decision on Ms. McLaughlin's FMLA status rather than on her performance at work.

### III. Conclusion

The defendants' motion for summary judgment is GRANTED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: April 24, 2003